## Crane Iron Works v. Emanuel Slag Company.

*Skillman & Smith,* for plaintiff; *Orrin Serfass,* for defendant.

STEWART, P. J., Feb. 13, 1928.—This is a rule for judgment for want of a sufficient affidavit of defense. Plaintiff's claim is based on two leases. The lower slag bank was leased from Jan. 1, 1914, to Sept. 1, 1921, by a lease dated Feb. 1, 1914, marked in the statement Exhibit "A." The rent was $1500 per year, payable in equal semi-annual instalments on July 1st and Jan. 1st of each year. By a lease dated Jan. 5, 1917, marked Exhibit "B," the above term was extended to Dec. 31, 1928, and the rental was increased to $1750 per annum, after Sept. 1, 1921, payable in semi-annual instalments on July 1st and Jan. 1st of each year. The upper slag bank was leased from

Jan. 1, 1917, to Dec. 31, 1928, by a lease dated Jan. 2, 1917, marked in the statement Exhibit "C." The rent was $1500 per annum, payable in equal semi-annual instalments on July 1st and Jan. 1st of each year. This lease contained a minimum quantity clause of 50,000 tons per year, and provided: "In the event that the Lessee fails to remove such minimum quantity in any year, it shall within three (3) months after the close of said year, or by April First following, pay to the Lessor three cents (3c) per net ton for each ton less than such minimum, which payment shall be in addition to the annual rental hereinbefore specified, and shall be considered as liquidated damages for failure on part of the Lessee to fulfill the conditions as to minimum tonnage." On the Exhibits "A," "B" and "C," filed with the plaintiff's statement of claim, it is averred that the following is endorsed: "A," "Allentown April 19, 1925 The within lease is hereby cancelled by mutual consent." Then follow the signatures of the parties. On Exhibit "B," the endorsement is: "Cancelled April 18, 1925 By Mutual Consent." Then follow the signatures of the parties. On Exhibit "C," the endorsement is: "Cancelled By Mutual Consent April 18, 1925." Then follow the signatures of the parties. The defendant, in the affidavit of defense, sets out that the above endorsements are inaccurate and that on each of the above Exhibits "A," "B" and "C" is endorsed the following: "In consideration of the execution of the agreement dated 15th day of April 1925 between the Replogle Steel Co and Emanuel Slag Co the within lease is hereby cancelled by mutual agreement and consent by the parties hereto." Then follow the signatures of the parties.

In the consideration of this rule, the latter wording of the cancellation must be assumed as absolute verity. The agreement referred to in the cancellations, set forth as Exhibit No. 1 of the affidavit of defense, was made by the Replogle Steel Company and the Emanuel Slag Company and was dated April 15, 1925, for a term beginning April 1, 1925, and ending April 1, 1939, for the same premises as were leased above between the Crane Iron Works and the defendant. On the back is an assignment to the Duquesne Slag Company of Pittsburgh, dated April 15, 1925. The statement of claim has Exhibit "D" attached, wherein plaintiff claimed the following items:

> "Rental of Upper Slag Bank at Catasauqua for period of three and one half months ended April 15th, 1925 @ $1500.00 per annum.................................. $437.50
>
> "Rental of Lower Slag Bank at Catasauqua for period of three and one half months ended April 15th, 1925 @ $1750.00 per annum.................................. 510.42
>
> "Charge for failure to remove required tonnage: Three and one half months minimum @ 50,000 tons per annum, 14,583 tons @ $.03 per ton............................ 437.50
>
> ——————
>
> $1,385.42"

It will be perceived that the third item is referred to as "Charge for failure to remove," &c. By the terms of the lease Exhibit "C," payment of this item is due within three months after the close of any year, and it was to be in addition to the annual rental and was to be considered as liquidated damages. It is impossible to find accurately from Exhibit "D" and from the fifteenth paragraph of the statement what period the three and a half months cover. If we assume that it means from Jan. 1, 1925, to April 15, 1925, there can be no recovery, for the reason that the entire year 1925 was, by the terms of the lease, given for the removal of the full amount of 50,000 tons, and when the parties themselves canceled the lease, the plaintiff could not ask for the pen-

alty for failure to remove for three and a half months of that year. If the period of three and a half months were for a prior year, the situation would be different. The status of this item, however, was not differentiated from the others by counsel on the argument. It was assumed that all three items constituted rental from Jan. 1, 1925, to April 15, 1925.

The legal question presented is not a difficult one. When the parties canceled the leases, no rent had accrued to the plaintiff. It would not be due until July 1st following the date of cancellation. That would be the result if it were a mere parol surrender and acceptance, but the parties hereto did not rely on any parol agreement for surrender and acceptance, but they placed their intention in writing and made the execution of the new agreement of April 15, 1925, the consideration for the cancellation. Nothing could be plainer than that such endorsement prevents the plaintiff from recovering in this case. In Fisher *v.* Milliken, 8 Pa. 111, is found the oft-quoted *dictum* of Chief Justice Gibson, as follows: "Nothing but a surrender, a release, or an eviction can, in whole or in part, absolve the tenant from the obligation of his covenant with his landlord." In Pratt & Reath *v.* Richards Jewelry Co., 69 Pa. 53, the syllabus is: "If the surrender was an accomplished fact, the Statute of Frauds did not apply; the lessor holding the premises would be estopped from claiming rent." In Auer *v.* Penn, 92 Pa. 444, the syllabus is: "The fact that a lease is for a longer term than three years does not present a rescission thereof by a parol agreement of the parties when accompanied by a surrender of the lease and possession by the tenant to the landlord and the acceptance thereof by the latter. It is not like a sale and transfer to a stranger of an interest in land greater than a term of three years, and is not, therefore, within the Statute of Frauds. By such acceptance and surrender, the relation of landlord and tenant is ended; and the landlord, having taken possession of the premises, either personally or by another tenant, is estopped from collecting rent." It is, however, contended that the defendant is liable because this rent had accrued. Plaintiff's counsel cite Hall et al. *v.* Bardsley, 5 W. N. C. 553. The facts are stated on page 554, and the opinion of the Supreme Court points out the exact point decided. It is short, and is as follows: "If the affidavit of defense in this case had alleged that the agreement of surrender and substitution of Howard R. Kern's liability for the rent declared upon was made before the unpaid rent fell due, there might be a plausible ground of defense. But these things occurred in 1877, while the rent fell due in 1875. Now, the original tenant was clearly bound for this rent under the terms of his covenant, while nothing in the affidavit avers a release or discharge of the rent thus previously accrued." So, also, the other case cited, Rafferty *v.* Klein, 256 Pa. 481, in the second syllabus, contains a correct statement, as follows: "A surrender of the demised premises by the lessee accepted by the lessor severs the relation of landlord and tenant and constitutes a complete defense to a claim for rent thereafter accruing." The rent in this case did not accrue *de die in diem.* Rent is not apportionable unless made so by statutory authority. In the very well-considered case of Bank *v.* Wise, 3 Watts, 394, Mr. Justice Kennedy said: "In no case whatever has rent ever been permitted by the common law to be apportioned in respect to time; no, not even in equity." Those principles are well settled. The rule is well stated in 18 Am. & Eng. Ency. of Law (2nd ed.), pages 294 and 295, as follows: "It is well settled that a surrender of the term ends the relation of landlord and tenant and releases the tenant from liability for rents to accrue. And when the surrender is between rent days, the tenant is discharged from all liability for rent, even for the period between the surrender

and the last rent day, and cannot be held liable therefor in an action for use and occupation, nor can the rent be apportioned. The parties may, of course, expressly provide at the time of the surrender that the surrender shall not release the tenant from liability for rents not then accrued. A surrender has no effect upon the liability of the tenant for rents accrued at the time of the surrender. And this is true though the rent was payable in advance for a period beyond the time of the surrender, and *a fortiori* rent paid in advance cannot be recovered on surrender." If the plaintiff had intended to claim this rent, it should have been provided for in the agreement of cancellation. The absence of such a provision shows the plaintiff was not intending to demand payment of the rent which at that time was not due.

One matter remains. The defendant sets up in the affidavit of defense that it "was duly and legally dissolved on the 5th day of December, 1925, and such dissolution was duly filed in the office of the Department of State of the State of New Jersey on December 22, 1925." The statement of claim averred that the defendant was a New Jersey corporation. There is nothing in the pleadings that shows the requirements of the laws of New Jersey upon dissolution of a corporation, but, assuming they are similar to ours, ought not the plaintiff to have a receiver substituted? This is only a suggestion. We base our decision on the ground that the plaintiff has no claim.

And now, Feb. 13, 1928, rule to show cause why judgment should not be entered for want of a sufficient affidavit of defense is discharged.

From Henry D. Maxwell, Easton, Pa.