[No. 14245.    Department One. — August 12, 1891.]

## A. P. WELCOME, APPELLANT, v. WILL J. HESS ET AL., RESPONDENTS.

LANDLORD AND TENANT — SURRENDER OF LEASE — ABANDONMENT — RE-LETTING FOR LONGER TERM — ACCEPTANCE OF SURRENDER — ESTOPPEL. —Where tenants leased a building for a term of years as a store, and abandoned the premises after one year's occupation thereof, sending the keys to the landlord, the acts of the landlord in taking possession of the premises, and reletting them for a period longer than the remainder of the term, without notifying the original lessees that he should do so on their account, and without notifying them that he should continue to hold them liable for the rent, show an acceptance by the landlord of the surrender, and he is estopped from denying it.

ID. — WHAT CONSTITUTES SURRENDER — STATUTE OF FRAUDS — OPERATION OF LAW — ACTS OF ESTOPPEL.— A surrender is the yielding up of an estate for life or years to the reversioner or remainderman; and under the statute of frauds it can be done only by express consent of the parties in writing, or by operation of law when the acts of the parties imply that both have consented, and are such as they would be estopped from disputing, and which would not be valid unless the term were ended.

ID. — ACTS IMPLYING CONSENT — INTENTION OF PARTIES — ESTOPPEL. — A surrender of a lease by operation of law results from acts which imply mutual consent· to the surrender, independently of the intention of the parties that their acts shall have that effect, and is by way of estoppel.

ID. — RESUMPTION OF POSSESSION — RELETTING — EVICTION. — The resumption of the possession of the leased premises by the landlord with the acquiescence of the tenant, or the giving of a new lease, or any act which will amount to an eviction, will estop the landlord, and render a formal surrender unnecessary.

ID. — ABANDONMENT — TITLE OF TENANT. — The tenant cannot abandon his title; and notwithstanding he has gone out of possession, unless the surrender is accepted by the landlord, his right of possession continues during the term.

ID. — IMPROVEMENT FOR TENANTS' BENEFIT — COMPENSATION FROM RENTS — EFFECT OF SURRENDER. — Where by the terms of the lease the only compensation to the landlord for an improvement made by him for the tenants' benefit is to be made from the rents reserved in the lease, the landlord, by accepting the surrender of the leased premises, is estopped from claiming damages for the expense of the improvement, although it may have added nothing to the value of the premises.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial.

The facts are stated in the opinion.

*Judson, Hester & Russell,* and *M. C. Hester,* for Appellant.

The acts of the lessor and lessees did not constitute a surrender by the lessees and an acceptance by the lessor. A surrender is the yielding up of the possession of an estate to the holder of the immediate reversion, whereby the particular estate or term becomes extinct or terminated by the "mutual consent" of the parties. (Wood on Landlord and Tenant, sec. 487; Taylor on Landlord and Tenant, sec. 507; *Beall* v. *White,* 94 U. S. 382; 1 Washburn on Real Property, c. 10, sec. 7, subds. 1, 6.) The mutual agreement between the lessor and lessee that the lease has been terminated is an essential element of a surrender. (*Martin* v. *Stearns,* 52 Iowa, 345; *Van Rensselaer* v. *Penniman,* 6 Wend. 579; *Thomas* v. *Nelson,* 69 N. Y. 121; *Prentiss* v. *Warne,* 10 Mo. 602; *Pier* v. *Carr,* 69 Pa. St. 328; *Morgan* v. *Smith,* 70 N. Y.

537; *Bloomer* v. *Merrill*, 1 Daly, 485; *Walls* v. *Atcheson*, 3 Bing. 462; *Peter* v. *Kendal*, 6 Barn. & C. 703.)

*Enoch Knight*, and *Brousseau & Hatch*, for Respondents.

If a landlord underleases without notice to the tenant that he does so on his account, it dispenses with a surrender on the part of the tenant. (Taylor on Landlord and Tenant, secs. 516–518; McAdam on Landlord and Tenant, secs. 207–209; Addison on Contracts, 263, 264; Chitty on Contracts, 353; *Auer* v. *State*, 99 Pa. St. 370; 44 Am. Rep. 114.) The act of the landlord in making the new lease operated as an absolute surrender of the old one. (*Ladd* v. *Smith*, 6 Or. 316; *Schieffelin* v. *Carpenter*, 15 Wend. 400; *Donkersley* v. *Levy*, 38 Mich. 54; *Talbot* v. *Whipple*, 14 Allen, 177; *Moore* v. *McCarthy*, 6 Thomp. & C. 451; *Coe* v. *Hobby*, 72 N. Y. 141; 28 Am. Rep. 120; *Enyeart* v. *Davis*, 17 Neb. 228; *Smith* v. *Pendergast*, 26 Minn. 318; *Bachen* v. *Rich*, 13 Daly, 62.) If a tenant abandon the leased premises before his term is ended, the landlord cannot take possession, and afterwards insist that it is a subsisting contract. (*Rice* v. *Dudley*, 66 Ala. 68; *Auer* v. *State*, 99 Pa. St. 370; 44 Am. Rep. 114.) Where the landlord by his acts takes control of premises abandoned by his tenant, he rescinds the agreement, and thereby discharges the tenant from any liability to pay rent thereafter, unless this control be simply to care for the property, and his acts be done for the benefit of the old lessee for the balance of the term. (*Walls* v. *Atcheson*, 3 Bing. 462; *Page* v. *Ellsworth*, 44 Barb. 636; *Carter* v. *Hammett*, 18 Barb. 608; *Smith* v. *Niver*, 2 Barb. 180; *Lamar* v. *McNamee*, 10 Gill & J. 116; 32 Am. Dec. 152; *Auer* v. *State*, 99 Pa. St. 370; 44 Am. Rep. 114; *Wood* v. *Walbridge*, 19 Barb. 136; *Schuisler* v. *Ames*, 16 Ala. 73; *Van Rensselaer* v. *Penniman*, 6 Wend. 569; *Bain* v. *Clark*, 10 Johns. 424; *Livingston* v. *Potts*, 16 Johns. 28.)

TEMPLE, C. — Plaintiff appeals from an order refusing a new trial.

This action is by a landlord to recover damages from his tenants. He avers that in October, 1887, he owned the demised premises, and was carrying on there a lucrative bakery business, which business added largely to the value of the premises; that defendants proposed to hire the premises, bakery, and business for five years, and to purchase his horses and wagons and the equipments of the establishment, and falsely and fraudulently represented that they would enlarge the establishment and business, and would operate the same for five years, when they would surrender the establishment and business to the plaintiff, while in fact they had no such intention, but their real design was to get control of the establishment and business and to remove the same to some other locality in the city; that, believing the representations, plaintiff did execute a lease to them, wherein defendants agreed to pay plaintiff, for the term of five years from October 19, 1887, the sum of $4,380, in monthly installments, sixty-five dollars per month for the first and second years, seventy-five dollars per month for the third and fourth years, and eighty-five dollars per month for the fifth year, and to surrender the premises at the end of that term in good condition; that they took possession, occupied, and paid rent until June 30, 1888, when they abandoned the premises, removed therefrom the bakery business, and since that time have been carrying on the business at another point in the city of Pasadena; that by reason of the abandonment plaintiff was compelled to, and did on the 1st of September, 1888, take possession of the premises and relet them for the term of five years at forty dollars per month, which was the best rental he could obtain. He charges that by reason of the abandonment of the premises and the diversion of the business he has been damaged in the sum of three thousand dollars.

Plaintiff also claims to recover for the cost of adding a storeroom for the defendants, which he avers added

nothing to the value of the premises, and also for their failure to surrender the premises in good condition.

The answer admits the lease, and that defendants moved out of the premises June 30, 1888. It avers that plaintiff had not kept his part of the agreement; that he did not give them the use of a certain out-building which he had agreed to furnish, and that he neglected and refused to place the premises in an inhabitable condition; that, in consequence, the defendants were compelled to, and did on the thirtieth day of June, 1888, surrender the demised premises to plaintiff, who accepted the same and took possession of the whole thereof.

The other allegations of the complaint are denied. A jury having been waived, the case was tried by the court.

It appears that defendants removed from the premises June 30, 1888, and sent the keys to plaintiff, claiming that plaintiff had not complied with his contract. Plaintiff did not at once re-enter, but on August 3d commenced an action to recover rent for the months of July and August.

September 1st, while that suit was pending, he called upon the defendants, and requested them to return and occupy the premises, which they refused to do. He then took possession, had the front painted, in order to obliterate the defendants' sign, made necessary repairs, and tried to find a new tenant, and finally rented them to Guan Kee for a laundry, for five years from October 1st, at forty dollars per month, which he says was the very best he could do. The new lease extended nearly one year beyond the term of defendants' lease.

So far as appears, nothing was said or done by plaintiff, other than is above stated, to qualify his acts in taking possession and reletting. He did not inform defendants that he did not accept the offered surrender, or that he would relet on their account. This suit was commenced December 3, 1888.

Do these facts show a surrender of the term? A surrender is the yielding up of an estate for life or years to the reversioner or remainderman. Under the statute of frauds it can be done only by express consent of the parties in writing, or by operation of law when the parties do something which implies that both have consented.

These acts are such as would estop the parties from disputing the fact of surrender, and which would not be valid unless the term were ended; as, for instance, a new lease accepted by the tenant, or the resumption of possession by the landlord if the tenant acquiesces, or the giving of a lease to another; and any act which will amount to eviction will estop the landlord, and make a formal surrender unnecessary. And while it is said that a surrender by operation of law is by acts which imply mutual consent, it is quite evident that such result is independent of the intention of the parties that their acts shall have that effect. It is by way of estoppel.

It was held in *Auer* v. *State*, 99 Pa. St. 370, 44 Am. Rep. 114, — and many cases are to the same effect, — that "the landlord may accept the keys, take possession, put a bill on the house for rent, and at the same time apprise the tenant that he still holds him liable for the rent. All this, as was said in *Marseilles* v. *Kerr*, 6 Whart. 500, is for the benefit of the tenant, and is not intended, nor can it have the effect, to put an end to the contract and discharge him from rent."

In that case the trial court had instructed the jury, in effect, that if the tenant gives up the demised premises, the landlord may re-enter and relet, and that it is for the advantage of the tenant that he should do so, and being for the mutual advantage of the parties, it raises no presumption that the landlord has accepted a surrender. Of this instruction the court said: "We see no error in this. It is good sense as well as good law."

In that case the landlord expressly refused to accept a

surrender, and notified the defendant that he would hold him for the rent.

While there are many cases which hold to this view, the weight of authority and the better reason is the other way. (*Ladd* v. *Smith*, 6 Or. 316.) The term is an estate in lands. The tenant, subject to the covenants of his lease, is the owner for the term. If he leaves the demised premises vacant, and avows his intention not to be bound by his lease, his title still continues, unless the landlord has accepted the offer of surrender. The landlord has no more right to the possession or to lease than a stranger. Admit that he may take such care of the property as will prevent waste, still he must not interfere with the right of the tenant to the absolute dominion and control. If he does so interfere, it is an eviction, and the tenant will be released.

The tenant cannot abandon his title; and notwithstanding he has gone out, unless the surrender is accepted, that continues. It is his right to resume possession at any time during his term. If he bring ejectment against the new tenant, what defense can the new tenant have, — except that plaintiff's right has ceased? How has it ended, unless by surrender?

The assertion that the reletting is for the interest of the tenant is gratuitous and unwarrantable, though if it were true, how would that fact tend to show authority in the landlord to dispose of the tenant's property? Any person might assume authority on the same ground.

The premises might be a rival business-stand which the tenant desires to have kept vacant. The complaint in this case substantially avers such fact. Perhaps if the tenant finally ascertains that his landlord will not accept the offered surrender, and could continue to collect his rents, he would elect to return.

It is said that defendants abandoned the premises at a time of great business depression at Pasadena. It may be that on the revival of business at the end of a few

months they would have been glad to resume business there, and would have done so with profit if the landlord had not relet. Under such circumstances, shall they continue to pay rent? If the surrender has not been accepted, have they not been evicted?

But this case hardly comes up to the authorities which we have criticised. In taking possession the landlord did not announce his intention to continue to hold the tenants. He relet without notifying the defendants that he should do so on their account. He relet for a period longer than the remainder of their term; thus showing plainly that he was acting in his own right, and not as their self-constituted agent. Under such circumstances, he cannot say that he did not accept the surrender.

The plaintiff also claims damages for the expense in building the storeroom for defendants, which he avers adds nothing to the value of the premises. His own statement being taken as true, it must be admitted that he has been hardly used, and if possible, consistent with legal principles, the courts should afford him relief. It is true that a lease is not only a grant or conveyance of an interest in land, but is also a contract between the parties, and upon a breach of any promise contained in it the injured party has his action as upon other contracts; but the trouble is, that by the terms of the contract compensation to the landlord for this improvement was to be made by the rents reserved in the lease. When, therefore, he elected to release the tenants from the remainder of the term he gave up his stipulated mode of compensation. In other words, his acts which estop him from claiming rent have deprived him of his remedy.

The case of *Respini* v. *Porta*, 89 Cal. 464, does not really militate against these views. It was the case of the lease — if it may be called such — of a dairy of cows, the necessary buildings, fixtures, and utensils, and pasturage for the cows. The right to the land was subordinate to

the business, the stock in which belonged to the lessor. It partook more of the nature of an ordinary contract than a grant of a term. The landlord in such a case, when the tenant abandons, cannot refuse to take possession, for otherwise his property would perish.

An examination of the record in the case shows that the point was conceded. The only question was as to the rule of damages.

As to the other claims for damage, the findings are against the plaintiff, on the facts, and the evidence sustains the findings.

It follows that the order appealed from should be affirmed.

Foote, C., and Belcher, C., concurred.

The Court.— For the reasons given in the foregoing opinion, the order appealed from is affirmed.