**In re AIRPORT ASSOCIATES, Debtor.**

**AIRPORT ASSOCIATES, Plaintiff,**

v.

**Marcus H. ASCH, Defendant.**

**Bankruptcy No. 77–00339(6).**

United States Bankruptcy Court,
D. Hawaii.

July 8, 1982.

Jerrold Y. Chun, Ethan D. B. Abbott, Honolulu, Hawaii, for plaintiff.

Philip D. Bogetto, Honolulu, Hawaii, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

The above-entitled matter came on for trial on August 25, 1981 before the undersigned Judge. Philip D. Bogetto, Esq. appeared as attorney for Defendant Marcus H. Asch (hereinafter referred to as "Asch"), and Ethan D. B. Abbott, Esq. and Jerrold Y. Chun, Esq. appeared as attorneys for Plaintiff Airport Associates (hereinafter referred to as "Plaintiff").

Based on the testimony of the witnesses, the documentary evidence, the pleadings and memoranda submitted by the parties, the Court hereby makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff is and was at all times relevant hereto a Hawaii partnership, doing business in the City and County of Honolulu, State of Hawaii.

2. Defendant Asch is and was at all times relevant hereto a resident of the City and County of Honolulu, State of Hawaii.

3. Plaintiff is in a Chapter XII arrangement proceeding described in Bankruptcy No. 77–00339, initiated by the filing of an original petition on August 3, 1977.

4. Plaintiff and Asch entered into a Deposit, Receipt and Offer to Lease, dated November 1, 1976, wherein Plaintiff agreed to allow Asch to substitute Hawaii Air-Gunnery, Inc. (hereinafter "Air-Gunnery"), in his place as tenant, if he would "personally guarantee the lease by executing Airport Center Standard Guaranty Agreement".

5. Plaintiff, as landlord, and Air-Gunnery, as tenant, entered into a Commercial Lease Agreement, dated December 1, 1976 (hereinafter referred to as "Lease"), covering approximately 2,904.2 square feet of space located on the second floor of the Airport Center Building at 3409 Ualena Street for a term of five (5) years commencing January, 1977.

6. A Guaranty Agreement was signed by Asch on January 4, 1977, and is attached to the Lease.

7. The executed Guaranty Agreement was drafted by and/or under the direction and control of Asch. It provides in paragraph 1 that "[t]he Guarantor guarantees payment of rent under the attached lease pursuant to the terms thereof."

8. On or about December 3, 1980, the Court entered judgment in favor of the plaintiff and against the defendant Asch in the sum of $26,089.19, part of said judgment being rent the Court found due and owing under the terms of the lease guaranteed by the Defendant Asch, covering the period September 1979 through June 1980.

9. This second action was brought by the Plaintiff seeking additional rent from July 1980 through August 1981, the breakdown being the following:

| | |
|---|---|
| July 1980 | $2,139.80 |
| August 1980 | $2,139.80 |
| September 1980 | $2,139.80 |
| October 1980 | $2,139.80 |
| November 1980 | $1,340.34 |
| December 1980 | $1,340.34 |
| January 1981 | $1,340.34 |
| February 1981 | $1,340.34 |
| March 1981 | $1,483.11 |
| April 1981 | $1,483.11 |
| May 1981 | $1,483.11 |
| June 1981 | $1,483.11 |
| July 1981 | $ 711.00 |
| August 1981 | $ 711.00 |
| Total: | $21,275.00 |

10. Plaintiff claims that Air-Gunnery also owes the sum of $2,751.28 for additional rent due for excess operating costs, a breakdown being the following:

| | |
|---|---|
| Additional rent from 1/1/80 through 10/31/80 | $2,180.20 |
| Additional rent from 11/1/80 through 2/28/81 | 571.80 |
| Total: | $2,751.28 |

11. The total principal amount claimed as due and owing to Plaintiff by Air-Gunnery is $24,026.28, as follows:

| | |
|---|---|
| Monthly rent | $21,275.00 |
| Additional rent | 2,751.28 |
| Total: | $24,026.28 |

12. Plaintiff made written demand in accordance with the aforementioned January 4, 1980 Guaranty Agreement upon Asch for $24,026.28.

13. Plaintiff claims that pursuant to the Lease and the Guaranty Agreement, Asch owes Plaintiff the principal sum of $24,026.28, plus attorneys' fees and costs. Plaintiff claims 25% of $24,026.28, i.e., $6,006.57, as attorneys' fees pursuant to the statutory rate as set forth in Hawaii Revised Statutes § 607–17. Plaintiff also seeks costs in the amount of $71.00 which breaks down as follows:

| | |
|---|---|
| Bankruptcy Court | $62.00 |
| Sheriff's Service Fee | 9.00 |
| Total: | $71.00 |

14. On or about November 1, 1980, Plaintiff entered into a lease with DFI Financial, Inc. for a portion of the space formerly occupied by Air-Gunnery.

15. DFI Financial, Inc. leased 1,000 square feet of the 2904.2 square feet origi-

nally leased to Air-Gunnery. The term of the new lease was to terminate June 30, 1988, whereas the space occupied by Air-Gunnery, Inc. was to terminate in or about February 1982.

16. Air-Gunnery and Asch were not informed of this lease prior to the execution of the lease but were informed at a later date that such a lease had been entered into.

17. Plaintiff did not notify Air-Gunnery nor defendant Asch that it was cancelling its lease when it entered into the new lease with DFI Financial, Inc.

18. Plaintiff, through its President, Richard I. Blum, testified that certain accommodations were made to induce DFI Financial, Inc. to enter into the lease.

19. In or about July 1981, DFI Financial, Inc. leased an additional 806.32 square feet of the space formerly occupied by Air-Gunnery. Neither Air-Gunnery nor Asch were informed of this action.

20. Defendant Asch argues that, due to the extensive alterations previously made to the premises by the Plaintiff and because of special considerations given to DFI Financial, Inc. in order to induce them to enter into the lease, the lease was entered into for the benefit of the Plaintiff, and thus Plaintiff has accepted a surrender of Air-Gunnery's lease, thereby relieving the defendant Asch from any continuing guaranty obligation under said lease.

21. Defendant Asch further argues that the lease entered into between Plaintiff and DFI Financial, Inc. is for a higher rental and for a term longer than that of the existing lease between Airport Associates and Air-Gunnery and there cannot be two leases on the same space without one lease being a sublease.

22. Plaintiff testified that there was no sublease in this matter and that a separate lease was entered into between Plaintiff and DFI Financial, Inc.

23. These Findings of Fact insofar as they are Conclusions of Law are incorporated in the Conclusions of Law as hereinafter stated.

## CONCLUSIONS OF LAW

■ 1. Where a lessee abandons leased property and the lessor takes possession and executes a new lease for said property, it does not necessarily mean that the lessor has accepted a surrender of the premises. The reletting of the premises indicates an intention of the lessor to either relet for the benefit of the lessee, in order to mitigate the damages for which lessee may be liable for breach of the lease, or to permit the lessee to surrender the premises and terminate the lease. Thus, the acceptance of a surrender is a matter of intention. *Millison v. Clarke*, 287 Md. 420, 413 A.2d 198, 201 (1980).

2. In the instant case, the facts when considered together, evidence the intention of Plaintiff to accept the surrender of the lease with Air-Gunnery.

■ 3. Prior to leasing a portion of the premises to DFI Financial, Inc., extensive alterations were made by Plaintiff to the leased premises in order for the Air-Gunnery rifle range space to be more conducive to regular business offices. By itself, the remodeling or alteration by the lessor of the demised premises to accommodate the new lessee is not sufficient to find an acceptance of the surrender. Rather, it is one of a number of factors to be considered.

4. Plaintiff executed a lease with DFI Financial, Inc. for a portion of the premises for a period extending far beyond the lease with Air-Gunnery. While the original lease terminated in February 1982, the lease with DFI Financial, Inc. continues for a term ending June 30, 1988. The reletting beyond the original term is not conclusive of Plaintiff's intent to accept a surrender of the lease, but is an important factor in determining the intention of the lessor. *Welcome v. Hess*, 90 Cal. 507, 27 P. 369 (1891); *C. H. Little & Co. v. Gay Apparel Corp.*, 108 F.Supp. 762 (S.D.N.Y.1952).

5. In *Michigan LaFayette Bldg. Co. v. Continental Bank*, 261 Mich. 256, 246 N.W. 53, 55 (1933), the court stated that "[O]rdinarily, the execution of a new lease extend-

ing beyond the period of the abandoning lessee's term would indicate acceptance of surrender of his lease". Also, the Supreme Court of Pennsylvania in *Rafferty v. Klein*, 256 Pa. 481, 100 A. 945, 947 (1917), stated:

If, as averred, plaintiff took possession of the demised premises, and without notice to the principal or surety made a lease thereof to a new tenant, for a term of years extending far beyond the expiration of the original term, thus blending the unexpired term in the general lease, even at a less rate per month, he cannot, in our opinion, recover from the original lessee for loss of rent resulting subsequent to the beginning of the new term, which seems to have been April 1, 1913.

6. Another relevant fact to consider is that under the new lease with DFI Financial, Inc., the Plaintiff receives a higher rental amount for the premises. The evidence shows that DFI Financial, Inc. occupies approximately 62% of the original area of the premises but it pays base rent amounting to 72% of the original rent paid by Air-Gunnery.

7. The facts also indicate that Plaintiff did not inform Air-Gunnery or Asch of the new lease prior to the execution of the lease. Thus, the lessor did not announce its intention to continue to hold the lessee responsible and that the reletting of the premises was on lessee's account.

8. When considered together, the actions of the lessor indicate an intent to accept a surrender of the original lease with Air-Gunnery, and not an attempt to mitigate damages on behalf of the lessee.

9. Thus, in the instant case, the Court finds an acceptance of the surrender of the original lease by the lessor as of November 1, 1980, when the lessor executed a lease for a portion of the original lease extending beyond the term of the original lease and for a higher rental. Defendant Asch was thereby relieved from any continuing guaranty obligation under the original lease.

10. The Court finds that defendant Asch is liable to Plaintiff for the lease rent from July 1, 1980 through October 31, 1980. The amount of the additional rent due is as follows:

| | |
|---|---|
| July 1980 | $2,139.80 |
| August 1980 | 2,139.80 |
| September 1980 | 2,139.80 |
| October 1980 | 2,139.80 |
| Excess operating costs (July 1980—October 1980) ($218.02 × 4 months) | 872.08 |
| | $9,431.28 |

11. The Court also finds that Plaintiff is entitled to attorneys' fees in the amount of $2,357.82 ($9,431.28 × 25%) and costs of $71.00. Therefore, defendant Asch is liable to Plaintiff for a total amount of $11,860.10.

Let Judgment be entered accordingly.